## JUNE TERM, 1841. 77

Bell *v.* The Real Estate Banking Company of Starkeville, Miss.

## Bell v. The Real Estate Banking Company of Starke-ville, Miss.

1. A contract by J, to deliver the entire crop of cotton which he might make during the year 1838, estimated at one hundred and seven bales, can not be declared on as a contract to deliver one hundred and seven bales of cotton absolutely, and without condition.
2. The proper construction of such a contract is, that it is an agreement to deliver the entire crop made by J, in the year 1838; and if he acted in good faith, and made no cotton, there is no breach; if a crop was made, but not delivered, the sureties to the contract are liable only to the extent of the value of the cotton made.
3. When Bank bills are at a discount, compared with specie, but the Bank is liable to be compelled to pay them in gold or silver, according to their tenor, the damages, properly accruing on the breach of a contract, of which such Bank bills formed the active consideration, can not be reduced because of their estimated depreciation.

Writ of Error to the Circuit Court of Greene county.

ACTION of assumpsit on a written guaranty, which is described in the three first counts of the declaration in these words:

"March 28th 1838. For and in consideration of having obtained from the Real Estate Banking Company of Starkeville, Miss., a loan of four thousand three hundred dollars, at nine months, I do hereby obligate myself, my heirs, &c. to deliver to said Real Estate Banking Company of Starkeville, Miss., the entire crop of cotton, which I may make during the present year, estimated at one hundred and seven bales, and to place the same in good order in due season, at McAlpin's bluff, on the Tombigbee river, then and there to be subject alone to the order of the said Real Estate Banking Company of Starkeville, Mississippi. It is understood that when said cotton is delivered, I am to have the privilege of directing as to where the same shall be sold; witness my hand and seal.

L. B. Johnson, (Seal).

We, the undersigned, bind ourselves as securities for the fulfilment of the above obligation.

Wm. T. Bell, (Seal.)
John M. Bell, (Seal.)

The fourth count, without setting forth the contract in *hæc verba*, describes it in substance, and avers that the principal,

78 ALABAMA.

Bell *v.* The Real Estate Banking Company of Starkeville, Miss.

Johnson, in the year 1838, made one hundred and seven bales of cotton. In this count, the breach is laid in not delivering the said one hundred and seven bales of cotton. In the previous counts, the breach laid is, that the said Johnson, did not deliver his entire crop, made in the year 1838, estimated at one hundred and seven bales: a fifth count describes the contract of Johnson, as a contract to deliver one hundred and seven bales of cotton absolutely, but in all other respects follows the terms of the contract as set out in the three first counts. In the fifth count, there is no averment that Johnson made any, or if any, how much, cotton in the year 1838, and the breach is laid in the non-delivery of one hundred and seven bales, at McAlpin's bluff.

The defendants pleaded the general issue, and one of them, Wm. T. Bell, also pleaded infancy; a verdict was found for the plaintiffs against the defendant, John M. Bell, and in favor of Wm. T. Bell, on the plea of infancy; on this verdict judgment was rendered.

In the progress of the trial, a bill of exceptions was sealed at the instance of the defendants, which discloses that the plaintiffs offered to read in evidence, the contract which is set out in the previous part of this statement. The defendant objected to its being read as evidence to support the fifth count of the declaration. The Court admitted it as evidence under all the several counts, to which the defendant excepted.

No evidence having been offered to show what amount of cotton was made by Johnson, during the year 1838, and it being admitted that he delivered none at the place designated in his obligation, the defendant asked the Court to instruct the jury that the covenant was not to deliver one hundred and seven bales of cotton, but the entire crop of cotton, which the said Johnson made during the year 1838; and the plaintiffs not having given any evidence of any cotton having been made by the said Johnson, during the year 1838, they could not recover any damages of the defendant; or if any, only nominal damages. This was refused: the defendant then asked the Court to charge the jury, that the measure of damages was, what the plaintiffs had lost by the non-delivery of the cotton, and not its value; and as no other evidence than the possession of the instrument of writing sued on, had been given of the injury the

Bell *v.* The Real Estate Banking Company of Starkeville, Miss.

plaintiffs had sustained by the non-delivery of the cotton, but only as to the value of the one hundred and seven bales, the plaintiffs could not recover any damages; or if any, only nominal damages. This was refused.

Evidence having been given, showing that the money stated in the bond to have been loaned to Johnson, by the plaintiffs, was in the bills of the said plaintiffs, associated under the style of the Real Estate Banking Company of Starkeville, Mississippi, purporting to be bank notes, and in no other bills or money; and evidence having been given conducing to show, that at the time when the said Johnson received said bills, that the paper of the said Bank, was in market, greatly below the value of gold and silver coin. The defendants asked the Court to charge the jury, that if the value of the cotton, as ascertained by the evidence, exceeded the money loaned, then the measure of damages, if they find for the plaintiffs, would be the amount of money loaned and the interest thereon. This charge was given, with the direction, that the jury was not to be governed by the value of the Starkeville Bank paper, as shewn in evidence, but the same which was expressed in the bond, with interest, should be the measure of recovery, provided the value of the one hundred and seven bales of cotton exceeded that sum.

The defendant excepted to all the charges given, and to the refusals to charge as requested, and now assigns the same as error, as well as the refusal to exclude the contract from the jury under the fifth count of the declaration.

CLARK, with whom was Mr. GRAHAM, for the plaintiffs in error, insisted that the contract of Johnson, was to deliver his entire crop of cotton, and not any specific quantity. If this is true, it was incumbent on the plaintiffs to aver and prove how much was made by him, and its value before they could recover more than nominal damages; (5 Term Rep. 522; 7 Porter, 508; Chitty on Con. 20; 6 Porter, 344; 14 East, 160; 3 Vesey, 298; 9 ib. 325; 2 John. 357; 2 Pothier on Ob. 41; 3 Comyn's Dig. tit. covenant, 3, E. Doug. 125; 2 Camp. 56; 8 Peters' 197; 2 Bac. Ab. 77; Chitty on Con. 202; 5 Term, 291; 7 ib. 672; 8 Porter, 497; 1 A. K. Marshall, 422; 1 J. J. Marshall, 408; 3 Dana, 482; 5 ib. 324, 140; 2 Camp. 156; 2 ib. 327; 2 N. H. 287.) The measure of damages, was the value of the depreciated money paid to

Johnson. Story on Bail. 2 ed. 2; Chitty on Con. 130; 5 Con. N. S. Rep. 23; 1 Porter, 273; 6 Cowen, 628; 8 Peters, 197.

THORNTON, with whom was Mr. JONES, contra, insisted that the contract was to be construed according to the motives which induced it; that it was clear that the one hundred and seven bales was inserted for the purpose of fixing the minimum quantity of cotton to be delivered, and without such a construction, the plaintiffs would be exposed to the greatest hazard, either from the fraud or the negligence of Johnson. See Thos. Raymond, 464; 13 East, 63; 3 J. J. Marshall, 94; 6 Conn. 249; 2 Gill &. John. 382; 11 Mass. 302.

The measure of the damages was the value of the cotton, and the charge given, is more favorable for the defendant than is warranted by strict law. The money received by Johnson, might not, in market, be equivalent to gold and silver coin, but it certainly is in law, because the plaintiffs could have been compelled to pay their bills in gold or silver.

GOLDTHWAITE, J.—1. The chief question in this case, arises out of the construction of the contract given in evidence.

On the one hand it is contended, that this contract amounts to a warranty; that Johnson should deliver one hundred and seven bales of cotton; and on the other, it is insisted that no particular quantity is stipulated, but the entire crop, made by him, whether much or little, was to be delivered.

It is apparent that the parties contracted with reference to a commodity not in existence when the contract was made, and of which the quantity might be greatly increased or diminished, by circumstances over which neither could exercise any control. The quantity which Johnson might make, was entirely a matter of conjecture, even with himself, and certainly not less so with the plaintiffs. Under such circumstances we find him contract, to deliver his entire crop *which he might make* for the year 1838, estimated at one hundred and seven bales ; and the defendants engaged to become bound as sureties for the performance of his obligation. It is only because of the introduction of the estimated quantity, that any doubt can exist as to the extent of the duties to be performed by Johnson, and consequently of the liability of the defendants in the case of his non-performance. It may be asked if one hundred and

seven bales were intended to be stipulated for, why did the contract specify the crop which he might make for the year 1838, when he would be liable, if this crop should be en-entirely destroyed by the vicissitudes of the seasons; or why was *his* cotton stipulated for, if the delivery of *another* would have been an equal compliance with the terms imposed? Again, if this contract was intended as an absolute security for the sum loaned, why did not these defendants become bound for the money as it is evident that the cotton supposed to be stipulated for, and warranted as to quantity, would at a very mode⁻ rate price per bale, produce the same result? These are questions which it seems to us cannot be satisfactorily answered under the supposition that the contract is determinate as to quantity.

There are several cases which seem to be very similar to this, and enable us to arrive at a satisfactory conclusion without difficulty. Thus in the case of Boyd v. Seffkin, (2 Camp. 326,) the contract was in these terms: " Sold for Mr. H. Seffkin, to Mr. M. Boyd, about 32 tons, more or less of Riga Rhine hemp, on arrival per Fanny and Almira, at £82 10*s* per ton. The ship arrived afterwards, but without a cargo. Lord Ellenborough held that this was a conditional sale, to be complete only on the arrival of the hemp. The parties did not mean to make a wager; the hemp was expected by the ship; had it arrived, it was sold to the plaintiff; but as none arrived, the contract was at an end. Hames v. Hamble, was a similar case, but differs from the first as being confirmed by the whole Court of King's Bench, (2 Camp. 327, note.) Hayward v. Scougall, (*ib.* 56.)

It might be inquired with equal force, whether the defendants intended to wager that Johnson would make one hundred and seven bales of cotton. They evidently did not intend to do so; they were willing to become bound that Johnson would deliver all the cotton he made, and to this extent they are bound, but no further.

We lay entirely out of view, all that has been said about a fraud, because, if such was the case, the action should not have been on the contract, but should have been for the deceit.— Hames v. Hamble, 2 Camp. 327, note.

2. We think, therefore, that the only construction which this contract can receive is, that the entire crop made by Johnson

in the year 1838, was to be delivered; if he acted in good faith and made none, there was no breach; and if a crop was made, but not delivered, the defendants are liable only to the extent of the value of the cotton actually made.

3. We understand the other instructions to amount to this, that the jury was not to compute the damages by the value of the bills received by Johnson when he obtained the loan, although it was shewn that they sold in the market at a discount, when compared with gold and silver coin; but the damages were to be computed upon the value of the cotton at the time and place appointed for its delivery; the whole sum considered, should not, however, exceed the sum loaned to Johnson, with interest on it.

These instructions seem to be as favorable to the defendant as the law would permit. Certainly, if the value of the Starkeville bills could come in question, it was correct to say to the jury that they must be computed as money; and the reason is, that the plaintiffs became liable to pay them according to their tenor, in gold and silver. It is not to be disputed that bank bills of most every kind would probably sell for much less than their nominal amount, if sold for coin; but this is not the proper criterion of their value, in practice, however much it may be in theory. The true question seems to us to be, were the bills issued in good faith, and could payment of them be compelled in coin? If this could be done, then they were of equivalent value to the obligation which Johnson gave for them.

For the error which we have already shown in the construction of the contract, the judgment is reversed, and the case remanded.